IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**VASHAWN FITZPATRICK (01),**

    Defendant.

Case No. 12-40089-01-DDC

## MEMORANDUM AND ORDER

This matter comes before the court on prisoner VaShawn Fitzpatrick's Unopposed Motion to Reduce Sentence (Doc. 72). Mr. Fitzpatrick asserts he has served 11 months of his 16-month custody sentence. *Id.* at 1. He seeks a sentence reduction to time-served because of the COVID-19 pandemic. *Id.* The government concurs with his motion. Doc. 74. Although it is a close call, the court, for reasons explained below, grants Mr. Fitzpatrick's motion.

**I.    Background**

On August 8, 2012, a grand jury returned a single count Indictment charging Mr. Fitzpatrick with knowing possession of a firearm after a previous conviction for a crime punishable by more than a year in prison. Doc. 1 at 1–2. This charge, if proved beyond a reasonable doubt, would violate 18 U.S.C. §§ 922(g) and 2. *Id.* at 2.

About seven months later, Mr. Fitzpatrick entered a plea agreement with the government under Fed. R. Crim. P. 11(c)(1)(C). Doc. 31. He pleaded guilty to the sole charge in the Indictment, producing a conviction for possessing a firearm after a previous felony conviction. *Id.* at 8. The plea agreement jointly proposed a 60-month custody sentence, followed by three years of supervised release. *Id.* at 12. The Presentence Investigation Report ("PSR") calculated

a total offense level of 25 and a criminal history category of V, producing a Guidelines sentencing range of 100 to 125 months' imprisonment. Doc. 33 at 19 (PSR ¶ 80). In July 2013, the court accepted the parties' plea agreement, and sentenced Mr. Fitzpatrick to 60 months' imprisonment, followed by three years of supervised release. Doc. 35 at 1–3 (Judgment). This 60-month custody sentence represented about a 40% reduction below the bottom rung of the Guidelines range.

Mr. Fitzpatrick served his custody sentence and began his term of supervised release on February 23, 2018. *See* Doc. 38 at 1. But, after he violated mandatory conditions of that release six times, the government petitioned the court to revoke his supervised release and impose a custody sentence. Doc. 50. The Violation Report concluded, based on Mr. Fitzpatrick's "Grade B" violations and criminal history, that the sentencing range was 18 to 24 months' imprisonment. Doc. 52 at 4 (Violation Report ¶ 20). The court revoked Mr. Fitzpatrick's supervised release and again imposed a below Guidelines sentence, *i.e.*, a 16-month custody sentence, followed by one year of supervised release. Doc. 68. This sentence represented a relatively minor 12% reduction below the bottom rung of the sentence range.

Mr. Fitzpatrick currently is serving the custody component of that sentence at FCI El Reno in Oklahoma. Doc. 72 at 1. Mr. Fitzpatrick's current motion seeks to reduce that sentence to time served because he has served about 70% of his custody sentence, he has chronic asthma, and he has a viable release plan. *Id.* at 1, 10. He asserts his chronic asthma "may place him at a high risk of serious illness or death should he contract COVID-19." *Id.* at 1. The government does not oppose his motion. Doc. 74. He reports his scheduled release date is December 9, 2020. Doc. 72 at 1 n.2. If released, Mr. Fitzpatrick asserts that he "will live with his mother in Topeka," and that the U.S. Probation Office already has inspected and approved this residence.

*Id.* at 10.  The Probation Office confirms that it has reviewed and approved his release plan.  To date, Mr. Fitzpatrick has served 11 months of his 16-month sentence.

**II.     Legal Standard**

Binding authority from our Circuit establishes that a "'district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'"  *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)).  Title 18 U.S.C. § 3582(c)—commonly called the compassionate release statute—permits a court to modify a term of imprisonment but only if certain exceptions apply.  Previously, these exceptions required the Bureau of Prisons to bring a motion on a defendant's behalf.  But in 2018, the First Step Act modified the compassionate release statute, authorizing a defendant to file his own motion for relief.  First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194 (2018).  This amendment authorized an inmate to make such a motion, but only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A).

District courts have reached different conclusions whether defendants must exhaust their administrative appeal rights before filing a motion for compassionate release in federal court.  One line of cases has concluded that inmates may come to court any time after 30 days have passed since they applied to the warden for compassionate release—even if the warden has denied their application within that 30 days.  *See, e.g.*, Mem. and Order, *United States v. Jackson*, No. 08-20150-02-JWL (D. Kan. May 29, 2020), ECF No. 16; *United States v. York*, No. 3:11-CR-76; 3:12-CR-154, 2019 WL 3241166, at *5 (E.D. Tenn. July 18, 2019).  A second

line of cases has concluded that the compassionate release statute confers jurisdiction on district courts only when an inmate either has (1) exhausted all administrative appeals of the Bureau of Prisons's decision to deny a request to bring a motion on the defendant's behalf, or (2) filed a request for release with his warden and the warden has not responded within 30 days. *See, e.g.*, Order, *United States v. Vaughn*, No. 5:18-CR-40107-HLT (D. Kan. May 20, 2020), ECF No. 58; *United States v. Bolze*, No. 3:09-CR-93-TAV-CCS-1, 2020 WL 2521273, at *3 (E.D. Tenn. May 13, 2020).

Mr. Fitzpatrick argues that he has exhausted his motion because more than 30 days have elapsed since he filed a request with his warden, even though his warden has denied his request. Doc. 72 at 3; Doc. 72-2 (Request to Warden dated May 3, 2020). But this concession doesn't resolve the issue entirely, because the court still must decide whether it has subject matter jurisdiction to decide Mr. Fitzpatrick's motion. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented. Subject-matter jurisdiction can never be waived or forfeited." (citation omitted)). The Tenth Circuit hasn't addressed whether § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional. But some judges in this district have concluded that it is. *See, e.g.*, *United States v. Walker*, No. 13-10051-EFM, 2020 WL 2101369, at *2 (D. Kan. May 1, 2020) ("The administrative exhaustion requirement is jurisdictional and cannot be waived."); *United States v. Read-Forbes*, No. 12-20099-01-KHV, 2020 WL 1888856, at *3–4 (D. Kan. Apr. 16, 2020) (deciding that exhaustion requirement is jurisdictional based on text, context, and relevant historical treatment of § 3582(c)'s various subsections, and noting that "[i]n the context of motions under subsections of Section 3582(c)

4

other than subsection (c)(1)(A), the Tenth Circuit has held that defendant's eligibility for a sentence reduction is jurisdictional").

Here, the government makes no jurisdictional argument because it doesn't oppose Mr. Fitzpatrick's motion. In a recent case, *United States v. Younger*, the government conceded that an inmate had exhausted his administrative remedies where he had not exhausted all his administrative appeals, and instead merely had waited 30 days after submitting his compassionate release request to the warden to file his motion in federal court. Am. Resp. at 2, *United States v. Younger*, No. 16-40012-02-DDC (D. Kan. June 9, 2020), ECF No. 99. In support, the government cited *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). In *Alam*, the Sixth Circuit treated § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule, not a jurisdictional bar. *Id.* at 832–34. Although claim-processing rules don't implicate the court's subject matter jurisdiction, the court must enforce them when properly invoked. *Id.* at 833. But, if not invoked, claim-processing rules are subject to waiver and forfeiture. *Id.* at 834; *see also United States v. Spaulding*, 802 F.3d 1110, 1130–34 (10th Cir. 2015) (Gorsuch, J., dissenting) (explaining why "§ 3582(c) doesn't strip the district court of any of its preexisting post-judgment jurisdiction and is instead and again a claim-processing rule"). In *Alam*, the court dismissed defendant's motion because defendant never exhausted it and the government properly had invoked the exhaustion requirement. *Alam*, 960 F.3d at 836.

The Tenth Circuit hasn't yet decided whether § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional. So, the court must predict how our Circuit would decide the question. The court finds the Sixth Circuit's decision highly persuasive and the court predicts the Tenth Circuit would adopt its reasoning. Consistent with *Alam*, the court treats § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule.

Applying this approach here produces a different result than it did in *Alam*. Two key facts lead to that different result: (1) Mr. Fitzpatrick waited 30 days after asking his warden to file a motion in federal court (Doc. 72 at 3; Doc. 72-2), and (2) the government does not oppose this motion (Doc. 74). *See Alam*, 960 F.3d at 834 (explaining that waiver and forfeiture are exceptions to mandatory claim-processing rules and citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)). Mr. Fitzpatrick thus has satisfied the exhaustion requirement of § 3582(c)(1)(A). And, even if he hasn't, the government explicitly has waived any objections based on the exhaustion requirement. So, the court turns to the substance of Mr. Fitzpatrick's motion.

### III.  Discussion

#### A. The court exercises its discretion when deciding whether "extraordinary and compelling" reasons exist.

Section 3582(c)(1)(A) authorizes district courts to reduce a term of imprisonment if, "after considering the factors set forth in Section 3553(a) to the extent that they are applicable," the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement is found in U.S.S.G. § 1B1.13. *United States v. Beck*, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019). As pertinent here, this policy statement provides that the court may reduce a term of imprisonment, after considering the § 3553(a) factors, if (1) "[e]xtraordinary and compelling reasons warrant the reduction," (2) "[t]he defendant is not a danger to the safety of any other person or the community," and (3) "[t]he reduction is consistent with this policy statement."

Application Note 1 to § 1B1.13 provides that extraordinary and compelling reasons exist "under any of the [four] circumstances set forth below" in (A) through (D). *Id.* § 1B1.13

application notes 1.  Subdivision (A) of Note 1 provides that the medical condition of a prisoner may qualify him for compassionate release if (i) he is suffering from a terminal illness, or (ii) he is suffering from a serious physical or medical condition that "substantially diminishes" his ability to provide self-care within the prison and he is not expected to recover.  *Id.* § 1B1.13 application notes 1(A).  Subdivisions (B) and (C) apply to age and family circumstances not invoked here.  Subdivision (D) supplies a "catchall" provision:  it applies when "[a]s determined by the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  *Id.* § 1B1.13 application note 1(D).

Mr. Fitzpatrick plainly does not qualify under two of the four subdivisions in Note 1.  He is not 65 years old (Subdivision (B)) and nothing suggests that the "family circumstances" provision in Subdivision (C) applies.  He also does not qualify under either of the two prongs described in Subdivision (A).  Nothing suggests Mr. Fitzpatrick "is suffering from a terminal illness"—prong (i)—or, as prong (ii) requires, that he has contracted a "serious physical or medical condition" and he "is not expected to recover from" it.[1]  *Id.* § 1B1.13 application note 1(A).

This leaves Subdivision (D).  The guidance in this subsection advises that § 1B1.13 applies when "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" of application note 1.[2]  *Id.* § 1B1.13 application note 1(D).

---

[1]   Prong (ii) also applies to "serious functional or cognitive impairment" and "deteriorating physical or mental health because of the aging process."  § 1B1.13 application note 1(A)(ii).  Mr. Fitzpatrick's motion does not invoke these alternatives.

[2]   As explained above, in Section II, § 3582 used to permit the Bureau of Prisons—but not inmates—to file a compassionate release motion.  *See* First Step Act of 2018, Pub. L. No. 115-391, § A

7

A few courts have ruled that only the Bureau of Prisons may invoke the "catchall" provision of subdivision (D). *United States v. Jackson* summarized the reasoning of one such decision:

> Congress gave the Sentencing Commission the mandate to decide what constitutes an extraordinary and compelling reason; the [First Step Act] did not expand the criteria for finding such a reason, but merely allowed defendants to file motions; there can be no relief under this statute without consistency with the policy statement; and the policy statement does not presently provide for a court determination of other reasons.

*United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020) (citing *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019)). But an "overwhelming majority of courts" have rejected this approach. *Id*. Instead, the cases comprising the majority approach have "concluded that a court may make the necessary determination that other circumstances warrant relief under this statute." *Id*. (citations omitted). In other words, "[w]hile the old policy statement provides helpful guidance, it does not constrain the [c]ourt's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Beck*, 425 F. Supp. 3d at 579; *see also Jackson*, 2020 WL 2812764, at *3 (assuming, for purposes of deciding the motion, that court is not limited to circumstances set forth in Subdivisions (A) through (C)); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020) ("In the wake of the First Step Act, numerous courts have recognized the court can determine whether extraordinary and compelling reasons exist to modify a sentence—and may do so under the 'catch all' provision . . . ."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (concluding that the correct interpretation of § 3582(c)(1)(A) is that when a defendant brings a

---

603(b)(1), 132 Stat. 5194 (2018). The Sentencing Commission hasn't revised § 1B1.13 of the Guidelines since that amendment and so, the language used in this provision still requires a motion by the Bureau of Prisons. *See Jackson*, 2020 WL 2812764, at *3. But the First Step Act obviated this requirement.

motion for a sentence reduction under the amended provision, the court can determine whether extraordinary and compelling reasons—outside those delineated in subdivisions (A)–(C)—warrant granting relief).

The court joins this prevailing view, concluding that it may decide whether "extraordinary and compelling" reasons warrant compassionate release.

### B. The factors in 18 U.S.C. § 3553(a) warrant a reduction to Mr. Fitzpatrick's sentence.

Mr. Fitzpatrick asserts that "extraordinary and compelling" reasons warrant compassionate release. He contends he "has suffered from chronic asthma for many years" even leading to hospitalization for respiratory distress before the COVID-19 pandemic. Doc. 72 at 7. Mr. Fitzpatrick argues his chronic asthma places him at a "higher risk of contracting COVID-19 and developing severe, possibly fatal complications." *Id.* Combined with the unfavorable conditions in the prison environment, Mr. Fitzpatrick argues his asthma condition is an extraordinary and compelling reason for the court to reduce his sentence.

Although Mr. Fitzpatrick's criminal history is troubling, given Mr. Fitzpatrick's severe asthma condition, and that he has served his underlying custody sentence and 70% of the sentenced imposed for his supervised release violations, the court, with some reservations, agrees with the parties and concludes that Mr. Fitzpatrick qualifies for a sentence reduction to time served. The court reaches this conclusion "after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent they are applicable"—the rubric § 3582(c)(1)(A) instructs the court to follow. Four of those statutory sentencing factors are particularly germane here. The next four subsections discuss them.

### 1. Nature and Circumstances of the Offense

The following facts come from the PSR, which Mr. Fitzpatrick did not object to in any respect.  Doc. 33 at 23 (PSR ¶ 105).

In August 2012, Mr. Fitzpatrick and several cohorts burgled a house in Shawnee County, Kansas.  *Id.* at 5 (PSR ¶¶ 12–13).  The group stole 11 firearms and about 1,000 ammunition rounds from the house.  *Id.* (PSR ¶¶ 14–15).  Mr. Fitzpatrick evaded law enforcement for almost 24 hours, but law enforcement apprehended two of his cohorts and found a few of the stolen firearms after Mr. Fitzpatrick had discarded them.  *Id.* at 6 (PSR ¶¶ 16–18).  When officers found Mr. Fitzgerald, he ran from them.  *Id.* (PSR ¶ 18).  DNA analysis revealed Mr. Fitzpatrick's DNA on one of the stolen firearms.  *Id.* (PSR ¶ 19).  To conclude by stating the evident, Mr. Fitzpatrick committed a serious felony offense.

Mr. Fitzpatrick served the custody component of his sentence on the underlying offense and commenced his three-year supervised release term on February 23, 2018.  Doc. 52 at 1 (Violation Report ¶ 2).  But, within his first year of supervised release, he violated several mandatory conditions of that release:  he tested positive for methamphetamine during five drug screenings, failed properly to report to the probation office, failed to attend required therapy, and was convicted of two crimes in state court.  *Id.* at 2 (Violation Report ¶¶ 5–6).

### 2. History and Characteristics of the Defendant

This case's underlying felony was not Mr. Fitzpatrick's first serious crime.  Two years before his arrest in this case, this court convicted him on a charge of possession of a firearm and ammunition by a prohibited person.  Doc. 33 at 12 (PSR ¶ 47).  He received another generous sentence—probation—but it was revoked because he violated the conditions of his release.  *Id.*  Mr. Fitzpatrick still was on supervised release for this conviction when he was arrested on the

underlying offense in this case. *Id.* at 13 (PSR ¶ 50).  Seven years before his arrest in this case, a Shawnee County District Court in Topeka, Kansas, had convicted Mr. Fitzpatrick on a charge of possession of methamphetamine. *Id.* at 11 (PSR ¶ 46).  He received a 32-month custody sentence. *Id.*  These conditions, as well as some less serious offenses for which he received non-custody sentences, produced a substantial criminal history score—10 points—for a category V classification. *Id.* at 13 (PSR ¶ 51).  Again stating the self-evident, Mr. Fitzpatrick is not a model citizen.

Mr. Fitzpatrick asserts he suffers from chronic asthma, and "has been hospitalized on several occasions for respiratory distress" before the COVID-19 pandemic.  Doc. 72 at 7.  His medical records confirm he often has needed medical assistance because of severe asthma complications.  Doc. 72-1 at 1–15 (medical records for seven medical interventions because of Mr. Fitzpatrick's asthma).  Although he uses a prescribed inhaler, it is not always able to control his asthma. *Id.* at 4.  Indeed, Mr. Fitzpatrick recently required medical intervention—in January 2020—well before the COVID-19 virus first appeared at FCI El Reno.

### 3. The Need for the Sentence to Reflect the Offense's Seriousness, to Provide Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct

When the court sentenced Mr. Fitzpatrick for his supervised release violations, it adhered to the statutory mandate that it impose a sentence that was "not greater than necessary."  18 U.S.C. § 3553(a).  But considering Mr. Fitzpatrick's severe asthma condition, and the resilient COVID-19 pandemic, reducing the custody component of Mr. Fitzpatrick's sentence by 30% still will produce a sentence that reflects the seriousness of Mr. Fitzpatrick's criminal conduct.  Indeed, Mr. Fitzpatrick already has served a five-year custody sentence for his underlying felony.  And, Mr. Fitzpatrick still is subject to a 1-year supervised release term, which would provide

additional deterrence to criminal conduct and provide some punishment. In other words, reducing Mr. Fitzpatrick's custody sentence to time served would leave him with a sentence that is sufficient but not "greater than necessary."

### 4. The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant

The court acknowledges that reducing Mr. Fitzpatrick's sentence to the 11 months he has served would reduce it below the applicable sentencing range.

Nevertheless, as explained below, the court is convinced—but just barely—that the factors justify this sentence reduction.[3]

### C. Conclusion

In sum, the pertinent sentencing factors in 18 U.S.C. § 3553(a) favor the reduction Mr. Fitzpatrick's motion seeks. Although Mr. Fitzpatrick's criminal history continues to trouble the court, Mr. Fitzpatrick's medical condition offsets this concern. He has a severe asthma condition, a condition rendering him particularly susceptible to severe complications from the COVID-19 virus. *See Coronavirus Disease 2019 (COVID-19)*, Centers for Disease Control and Prevention (Apr. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html ("People with moderate to severe asthma may be at higher risk of getting very sick from COVID-19."). The court recognizes that this combination has increased the severity of the sentence beyond the 16 months originally imposed. *United States v. Mel*, No. CR TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("The fact that Mel has been incarcerated . . . during a serious outbreak of COVID-19 inside the facility sufficiently increased the severity of the sentence beyond what was originally anticipated . . . ."). And it has

---

[3] The court is mindful of the other factors identified by § 3553(a). They are not pertinent, however, to the current motion.

increased its severity to the point where an 11-month custody sentence is sufficient. The court thus grants Mr. Fitzpatrick's Unopposed Motion to Reduce Sentence (Doc. 72) and reduces his custody sentence to time served.

Nevertheless, the court does not reduce Mr. Fitzpatrick's 1-year supervised release term. Upon his release from custody, Mr. Fitzpatrick must report to the probation office in the federal judicial district where he is authorized to reside within 72 hours of his release from imprisonment, unless the probation officer instructs him to report to a different probation office or within a different timeframe.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Fitzpatrick's Unopposed Motion to Reduce Sentence (Doc. 72) is granted. Mr. Fitzpatrick's custody sentence is reduced to time served.

**IT IS FURTHER ORDERED THAT** the Bureau of Prisons immediately must place Mr. Fitzpatrick in isolation or quarantine for a period not exceeding 14 days. After this quarantine period, the Bureau of Prisons must release Mr. Fitzpatrick from FCI El Reno. Mr. Fitzpatrick's supervised release term will begin immediately after his release from custody.

**IT IS SO ORDERED.**

**Dated this 23rd day of July, 2020, at Kansas City, Kansas.**

                                                        **s/ Daniel D. Crabtree**
                                                        **Daniel D. Crabtree**
                                                        **United States District Judge**